HUMPHREY PAUL *v.* OSCAR A. BURTON, VERNON P. NOYES AND DAVID P. NOYES.

*Book Account. Judgment. County Court. Execution. Attachment. Receiptor.*

The omission in a County Court writ on book account, in which the *ad damnum* is stated at one hundred dollars, to aver that the debit side of the plaintiff's account exceeds that sum will not invalidate a judgment for the plaintiff rendered without any objection from the defendant on that ground, if it appear from the whole record that the debit side of the plaintiff's account exceeded one hundred dollars.

The case of *Bates* v. *Downer*, 4 Vt. 178, considered and explained.

The Chittenden County Court at the November Term, 1857, on the 7th of December took a recess or adjourned, for the purpose of completing the business of its session, until the 21st of December, when it reassembled and continued its session until the 24th of the same month, when it finally adjourned. On the 7th of December an order was made by the Court that executions on judgments in trials completed might issue as of date of December 8th. *Held,* that in order to preserve the lien of attachment on personal property, it was sufficient to put the executions into the hands of the officer making the attachments at any time within thirty days after the 25th of December, and that it was immaterial in this respect whether the judgments were completed before the 7th of December or not.

An attachment of coal merely by leaving a copy in the town clerk's office, in the return of which the only description of the property attached is *" all the coal in the town of B.,"* is invalid.

But still one who has receipted to the officer a definite quantity of coal which the latter has actually taken possession of under such an attachment, will be bound to return it to respond to the judgment.

TROVER for one hundred forty-five tons of coal and one hundred twenty-six and a half cords of wood. Plea the general issue, and trial by the court at the September Term, 1858, in Chittenden County,—BENNETT, J., presiding.

On trial the plaintiff introduced as evidence a receipt for the property mentioned in the declaration, described as attached by the plaintiff, as sheriff, on two writs, one in favor of *Wires & Peck* v. *R. Landon & Co.*, and the other in favor of the *Farmers & Mechanics' Bank* v. *Wm. H. Wilkins.* This receipt was dated February 12th, 1855, was signed by the defendants, and contained a valuation of the property, at eight hundred sixty dollars

and a promise to return the same to the plaintiff on demand.

The plaintiff also introduced in evidence the record of all the proceedings in the two suits mentioned in the receipt, from which it appeared that the writ in the suit of *Wires & Peck* v. *R. Landon & Co.* was dated October 9th, 1854, and returnable at the November Term, 1854, of the Chittenden County Court; that it was in the common form of a writ in an action on book account, and demanded in damages one hundred dollars, and contained no allegation ·whatever· in regard to the amount of the debtor side of the plaintiff's account.

The record further showed that this writ wäs served by the plaintiff as deputy sheriff, on the 10th of October, 1854, by attaching as the property of Wm. H. Wilkins, one of the firm of R. Landon & Co., " all the coal and cordwood on the wharf occupied by him in Burlington," and that this service was made by lodging a copy of the writ, with a proper return thereon, in the town clerk's office in Burlington. The suit was duly entered at the November Term, 1854, when the defendants therein were defaulted, judgment to account was rendered, and an auditor appointed, and the suit was continued from term to term until the November Term, 1857, when the auditor made a report, and judgment was rendered thereon for the plaintiffs, for ninety dollars and twenty cents damages, and eighty-four dollars and forty-eight cents costs of suit, amounting in all to one hundred seventy-four dollars and sixty-eight cents, upon which judgment an execution issued, dated December 25, 1857, which was put into the plaintiff's hands as deputy sheriff, for collection, on the 11th of January, 1858. Upon the 12th of January, 1858, the plaintiff demanded the property described in the receipt, of the defendants, and they refused to deliver it.

It further appeared by the record of the proceedings in the suit of *Wires & Peck* v. *R. Landon & Co.*, that the debit side of the account of the plaintiffs in that suit, which was attached to and made a part of the auditor's report, exceeded one hundred dollars. The defendants objected to the introdution of the evi‑ dence showing this fact, but the court admitted it, to which the defendants excepted.

It further appeared that at the November Term, 1857, the

county court, after assembling at the commencement of the term, continued its session until the 7th of December, 1857, when it took a recess until the 21st of December, 1857, or as the entry on the docket expressed it, "the court for the purpose of completing the business of its session was adjourned to the 21st day of December, 1857," and at the same time the court made an order which was recorded on the docket of the court as follows :— " Dec. 7, 1857: Executions on judgments in trials completed may issue as of date of Dec. 8, 1857."

The defendants introduced evidence tending to show that the judgment in *Wires & Peck* v. *R. Landon & Co.*, was rendered and entered on the docket previous to the 7th of December, 1857, and the plaintiff gave evidence tending to prove the contrary, but the court held that it was immaterial whether the judgment was rendered before or after that date.

It further appeared that the court finally adjourned at the November Term, 1857, on the 24th of December, 1857.

It appeared from the record of the suit of the *Farmers & Mechanics' Bank* v. *Wilkins*, that the writ was dated and served October 10th, 1854 ; that it was returnable to the November Term, 1854, of the Chittenden County Court, and was served by the plaintiff, by lodging a copy in the town clerk's office in Burlington, with a return thereon that the plaintiff had attached all the coal in the town of Burlington.   This writ was duly entered in court at the term to which it was returnable, and was continued from term to term until the November Term, 1856, when judgment was rendered for the plaintiff, for five thousand four hundred thirty-four dollars and fifty cents damages, and twenty-nine dollars and sixty-four cents costs, and an execution was issued for that sum, dated January 28, 1857, and was returned *nulla bona*, and an alias execution issued on the 11th of January, 1858, and placed in the plaintiff's hands on that day for collection.   This execution was in the plaintiff's hands on the 12th of January, 1858, when the property described in the receipt was demanded by him of the defendants.

The final adjournment of the court, at the November Term, 1856, was on the 27th day of January, 1857.

The plaintiff testified that he served the writs in the cases of

*Wires & Peck* v. *R. Landon & Co.*, and *Farmers & Mechanics' Bank* v. *Wilkins*, by lodging copies in the town clerk's office, on the same day, as appeared by his returns thereon, but that he served the former fifteen minutes previous to the latter, and that he took possession of the property described in the receipt under the attachment by virtue of those writs, and held it under such attachments until the execution of the receipt; and so the court found to be the fact.

Upon this evidence the defendants claimed first that the judgment in the case of *Wires & Peck* v. *R. Landon & Co.* was entirely void, because the *ad damnum* in the writ was only one hundred dollars, and the writ contained no allegation that the debit side of the plaintiff's account exceeded that sum, and therefore that no lien on the property described in the receipt was created thereby; second that the execution in that case should have been taken out within thirty days after the 8th of December, 1857, in order to preserve the lien on the property attached upon the writ; and third, that the attachment in the case of *The Farmers & Mechanics' Bank* v. *Wilkins* was invalid.

But the court decided against the defendants upon all these points, and rendered judgment for the plaintiff for the value of the coal mentioned in the receipt, with interest from the time of the demand thereof, made by the plaintiff of the defendants, and also for the amount of the judgment in favor of *Wires & Peck* v. *R .Landon & Co.*, with interest from the time the same was rendered.

To this judgment the defendants excepted.

*L. E. Chittenden* and *Asahel Peck,* for the defendants.

1. The action in favor of *Wires & Peck* v. *R. Landon & Co.* was not within the juisdiction of the county court, because the *ad damnum* in the writ was only one hundred dollars, and the writ contained no allegation that the debtor side of the plaintiff's book exceeded that sum.

All the facts necessary to give the court jurisdiction to entertain a civil action must be set forth in the writ and declaration, and when the record shows a case affirmatively without the juris-

diction of the court in which the action is brought, the whole proceedings are *coram non judice* and void.

The evidence that the auditor's report showed that the debtor side of the plaintiff's book exceeded one hundred dollars, was not admissible. The jurisdiction of a court cannot be made to depend upon the fact that the record discloses that such a state of facts was proved as to warrant the exercise of its authority. *Sheldon* v. *Newton*, 23 Ohio 499; *Bates* v. *Downer*, 4 Vt. 178; *State* v. *Richmond*, 6 Foster 232; *Chemung Bank* v. *Judson*, 4 Selden 254.

2. The county court erred in holding that it was immaterial whether the judgment in *Wires & Peck* v. *Landon & Co.* was rendered and perfected before the adjournment of the court on the 7th of December, 1857. The county court has the power by statute to hold an adjourned session. Comp. Stat. p. 222, sec. 27. The judgment having been perfected and completed before the adjournment, the plaintiffs in the suit of *Wires & Peck* v. *R. Landon & Co.* were entitled to their execution by law without the leave of the court. The adjourned term is not for this purpose a continuation of the former term, but a new term; as was directly held in the case of *Hoar* v. *Commissioners of Jail Delivery;* 2 Vt. 402. The execution therefore in *Wires & Peck* v. *Landon & Co.* issued too late to preserve the lien on the property.

3. The attachment on the writ in favor of *The Farmers' & Mechanics' Bank* v. *Wilkins*, of "all the coal in the town of Burlington," without refering to its locality, quantity, quality or situation, or stating in whose possession it was, was entirely void and created no lien on the property. The return is entirely too vague. Drake on Attachments, sec. 198.

*Wm. G. Shaw*, for the plaintiff.

1. *a.* The suit of *Wires & Peck* v. *R. Landon & Co.* was actually within the jurisdiction of the county court. If any defect existed in the writ, it was one merely relating to the *form* of declaring; merely an omission to state that the debit side of the plaintiff's book exceeded one hundred dollars. An omission of this kind is aided by verdict and judgment, and does not render

the judgment void. The presumption is after judgment, either that the defendants waived the objection, or that the court allowed an amendment of the writ. *Newcomb* v. *Peck*, 17 Vt. 302 ; *Hammond* v. *Wilder*, 25 Vt. 342 ; *Eaton* v. *Houghton*, 1 Aikens 380.

. *b.* Every judgment of a superior court of general jurisdiction, like our county court, is presumed to be valid until it is set aside by motion in arrest or writ of error or some other proceeding, operating directly and solely upon the judgment itself. The validity of such a judgment cannot be impeached, collaterally. *Prigg* v. *Adams*, 2 Salk. 674 ; *Allen* v. *Huntington*, 2 Aik. 249 ; *Walbridge* v. *Hall*, 3 Vt. 114 ; *Blanchard* v. *Goss*, 2 N. H. 491 ; *Brown* v. *Atwell*, 31 Maine 351; *Drew* v. *Livermore*, 40 Maine 266 ; *Adams* v. *Jeffries*, 12 Ohio 271 ; *Ex parte Watkins*, 3 Pet. 193 ; *McCormic* v. *Sullivant*, 10 Wheat. 192 ; *Chemung Bank* v. *Judson*, 4 Selden, 254.

2. The whole testimony in regard to the particular time in the November Term, 1854, when the judgment in the case of *Wires & Peck* v. *R. Landon & Co.* was rendered, was entirely immaterial, and was properly disregarded by the court. The statute is explicit on this point. Sec. 83, chap. 21, p. 253 of the Comp. Stat. provides that personal property must be taken in execution within thirty days from the *time of rendering final judgment* in order to preserve the lien gained by attachment.

Sec. 84 of the same chapter provides that the day on which the plaintiff shall first by law, *without leave of the court,* be entitled to an execution on a judgment rendered in his favor shall be deemed the time of rendering such judgment *in all cases,* so far as relates to holding property attached on mesne process.

Sec. 81 provides that no execution shall issue on any judgment rendered by the supreme or county courts, until twenty-four hours after the rising of the court, unless by special permission of such court. Hence the time when the thirty days begin to run must be the day after the final rising of the court and none other.

3. As to the attachment of the coal in the suit of the *Farmers' & Mechanics' Bank* v. *Wilkins* :

*a.* The defendants, being receiptors, are estopped from denying that the coal in question was attached. They have expressly admitted that fact in the receipt. A receiptor cannot deny either

that the property described in the receipt was attached, that the officer had possession of it under the attachment, that he received it from the officer, or that the property was attachable. Drake on Attachments, sec. 349 ; *Brown* v. *Atwell*, 31 Maine 351; *Spencer* v. *Williams*, 2 Vt. 209 ; *Lowry* v. *Cady*, 4 Vt. 505; *Morrison* v. *Blodgett*, 8 N. H. 238 ; *Jewett* v. *Torry*, 11 Mass. 219 ; *Drew* v. *Livermore*, 40 Maine 466.

*b.* But even if the attachment was in the first instance too vague, and would have remained so, had the officer done nothing more than leave the copy in the town clerk's office ; still the subsequent acts of the officer in actually taking possession and retaining control of the coal in question, removed all vagueness or objection on that account. The description in the return is certainly comprehensive enough to include the coal described in the receipt ; there is no contradiction between the decription in the return and that in the receipt The taking possession of the coal by the officer, and retaining the control thereof, were positive and notorious acts, and rendered the leaving of a copy at the town clerk's office unnecessary ; and as the coal in question is shown in the officer's possession under the attachment, and is with an easy and natural intendment included within the description in the return, it is too late now, after judgment, to object to the insufficiency or vagueness of the return. *Fletcher* v. *Cole*, 26 Vt. 170.

PIERPOINT J. The first question raised by the defendants is, as to the validity of the judgment in favor of *Wires & Peck* v. *R. Landon & Co.*, under the proceedings in which the property was attached.

The suit was brought originally in the county court, the plaintiff there claiming in damages only one hundred dollars, there being no allegation in the writ or declaration, as to the amount of the debtor side of the plaintiff's account; but no motion to dismiss or objection was made to the proceeding on that account. The matter was referred to an auditor, who made his report of the accounts of the parties, and the balance which he found due. From this report as now of record, it appears that the debtor side of the plaintiff's account did exceed one hundred dollars.

Paul *v.* Burton et al.

On the report of the auditor, the county court rendered judgment for the plaintiffs. It is insisted by the defendants here, on the authority of *Bates* v. *Downer*, 4 Vt. 178, that this judgment was void for the above cause, and that the defect cannot be aided by anything that subsequently appears in the record of the proceedings.

In the case of *Bates* v. *Downer*, the question was raised on a motion to dismiss. The plaintiff offered evidence to show that the debtor side of his account exceeded one hundred dollars. This evidence was rejected. No exception appears to have been taken to that ruling, and no notice is taken of it in the decision. It is not perfectly obvious on what ground the evidence was rejected; inasmuch as the jurisdiction is not made to depend on the amount of the *ad damnum*, the balance due, or upon any fact that it is necessary for the plaintiff to allege in order to show his cause of action. The question of jurisdiction in actions on book often depends upon the proof; if the party *claims* over one hundred dollars, that does not give the court jurisdiction, if the proof shows the debtor side of his account to be less. If the proof of the debtor side of the account will oust the jurisdiction, why will it not confer it, inasmuch as the jurisdiction is by statute made to depend solely upon that? The proof was not offered to contradict any allegation in the writ, neither was it inconsistent with anything in it. It is conceded that the plaintiff was not bound to claim any more than was actually due, but that he should have alleged that the debtor side of his account was more than one hundred dollars. The omission of that fact was a defect in the pleading, but the jurisdiction does not depend upon that, but upon the amount of the account, and when it can be made to appear that that is within the jurisdiction of the court, so that they in fact have jurisdiction of the subject matter and of the parties, what practical or legal objection can there be to the court permitting an amendment of the declaration by an insertion of the necessary allegations, inasmuch as the jurisdiction is not made to depend upon its existence in the declaration, but upon its truth ; and if the amendments were made, and it afterwards turns out in proof that the allegation is not true, the court still has no jurisdiction.

Paul *v.* Burton et al.

If this be so, then it would seem that after the case had been permitted to proceed to final judgment, such defect in the declaration ought not to render the judgment void, when upon an inspection of the whole record, it does appear affirmatively, that the court rendering the judgment had actual jurisdiction of the parties, and of the subject matter.

If, upon the face of the writ and declaration, it had appeared affirmatively, that the case was without the jurisdiction of the court, it might have merited a different consideration.

We are inclined therefore to think the judgment in this case is not to be held void, even though the court might have dismissed the suit, if a motion for that purpose had been made, as in *Bates* v. *Downer.*

It is next claimed that *Wires & Peck* did not take out their executions, and charge the property attached upon their writ within thirty days from the time their judgment was rendered; It appears that the execution was put into the hands of the officer on the 11th of January, 1858. It also appears that the November Term of the Chittenden county court, in 1857, at which the judgment was rendered, continued its session until the 7th of December, 1857, when it took a recess, or adjourned to the 21st of December for the purpose of completing the business of the session. The court finally adjourned on the 24th of December, 1857. It is insisted that the regular term of the court closed on the 7th of December ; and that at the expiration of twenty-four hours thereafter the party was entitled to his execution, and not having issued it within thirty-days thereafter, the property was discharged.

Was the term of the court on the 7th of December so closed and completed that its subsequent session on the 21st is to be regarded as an adjourned term of said court, within the meaning of the statute authorizing an adjournment? We think it was not. It can be regarded only as a suspension of the business of the term for a definite period, adopted from considerations of convenience, and for the purpose of completing the business of the session, without any intention on the part of the court of making it an adjourned term, separate and distinct from the regular term, when parties, attorneys, clerk and court would be entitled to tax

costs, as for a separate and distinct term. Authority to do so is given by the statute, but the facts persented by this case, we think do not show an exercise, or an attempt to exercise, any such authority; it can be regarded only as a recess, such as occurs at almost every term of our county courts for longer or shorter periods.

That the county court so regarded it, is apparent from the fact that they felt it necessary or proper to make an order in relation to the issuing of executions, which would have been wholly unnecessary if they had regarded the regular business of the term as closed.

The question then arises as to the effect of such order. The statute provides that the day on which the plaintiff shall first, *by law without leave of the court*, be entitled to an execution on any judgment, shall be deemed the time of rendering such judgment in all cases so far as relates to holding property attached, &c. If the plaintiff in that judgment was entitled to an execution before the final adjournment of the court, it must have been by virtue of the leave of the court granted for that purpose, and not by virtue of law, as the statute declares that executions shall not issue until twenty-four hours after the rising of the court, unless by special permission of such court. And although the order of the court may have authorized the party to take out his execution at an earlier day, still his lien upon the property would continue until the expiration of the thirty days from the day after the rising of the court, and the lien of any subsequent attaching creditor is to be ascertained by computing from the same period; so that the execution in this case was issued in season to charge the property.

But it is further insisted that no lien was created on the coal in controversy by the plaintiff on the writ in favor of the *Farmers & Mechanics' Bank* v. *Wilkins.*

So far as an attempt was made by the plaintiff to attach the coal in question, by leaving a copy of the writ in the town clerk's office, with a return thereon that he had attached all the coal in the town of Burlington, without anything further to indicate the quantity, the kind or locality of the coal, we think it altogether insufficient to create any lien whatever, and if this were all there

was to sustain the plaintiff's claim to recover for the coal, it is very clear that the judgment of the court below allowing that claim should be reversed. The case, however, shows that the plaintiff did not rely upon the attachment by leaving a copy in the town clerk's office, but immediately took possession of the coal and retained it under the process until the defendants executed their receipt to him therefor, on the 12th of February, 1858.

This, we think, brings the case clearly within the principle established in *Fletcher* v. *Cole*, 26 Vt. 170, and was sufficient to constitute a valid attachment; at all events, it is sufficient to make the officer liable to the creditor for the property, and to enable him to maintain this action against the receiptors, to whom he delivered the property, and who agreed to return it to him on demand.

The fact that Burton purchased the property from Wilkins cannot avail him here ; he bought it knowing of the attachment, and that the plaintiff held the property in his possession by virtue of it; all this appears on the face of the receipt itself.

The judgment of the county court is affirmed.